984 P.2d 104

Mualla ATAHAN, Individually, and Mualla Atahan and Stuart M. Cowan, as Guardian Ad Litem of Nejat Atahan, a quadriplegic adult; Ahmet Atahan, Bahar Atahan, Gulperi Atahan, Plaintiffs–Appellants,

v.

Hidehiro MURAMOTO, Defendant–Appellee, and John Does 1–10; Jane Does 1–10; Doe Partnerships 1–10; Doe Corporations 1–10; Roe "Non–Profit" Corporations 1–10; and Roe Governmental Entities 1–10, Defendants.

No. 21073.

Intermediate Court of Appeals of Hawai'i.

June 3, 1999.

As Amended June 8, 1999.

Certiorari Dismissed Sept. 8, 1999.

---

Warren Price, III, and Terence S. Yamamoto (Price, Okamoto, Himeno & Lum, of counsel); and Stuart M. Cowan, Honolulu, on the briefs, for plaintiffs-appellants.

John H. Price and Susan Y.M. Chock, Honolulu, on the briefs, for defendant-appellee.

BURNS, C.J., ACOBA, J., and Circuit Judge WILFRED K. WATANABE, in Place of WATANABE, J., Recused.

Opinion of the Court by BURNS, C.J.

Plaintiffs–Appellants (Plaintiffs) appeal from the circuit court's September 23, 1997 "Judgment By: Order Granting Defendant Hidehiro Muramoto's Motion for Summary Judgment Filed August 20, 1997." We affirm.

This opinion decides that when "A" parks his car on beachfront land owned by "B" and then walks on "B's" land to the public beach and along the public beach fronting "B's" neighbor's land to the public beach fronting the neighbor of "B's" neighbor's land and then goes into the ocean and is injured, Hawai'i Revised Statutes (HRS) chapter 520 (1993) abolishes any duty with respect to "A's" recreational use of the beach and the ocean that "B" may otherwise owe to "A."

## PARTIES

Plaintiffs include the following residents of Turkey: Nejat Atahan (Nejat), husband, father, and incapacitated adult; Mualla Atahan (Mualla), wife, mother, and Co–Guardian Ad Litem and Co–Guardian of the Property of Nejat; and Bahar Atahan (Bahar), daughter.

Plaintiffs include the following residents of the state of New York: Ahmet Atahan (Ahmet), son; and Gulperi Atahan (Gulperi), daughter.

Plaintiffs include the following resident of the state of Hawai'i: Stuart M. Cowan (Cowan), Co–Guardian Ad Litem and Co–Guardian of the Property of Nejat.

Defendant–Appellee Hidehiro Muramoto (Muramoto) is a resident of Japan.

## STANDARD OF REVIEW

An appellate court reviews an award of summary judgment under the same standard

applied by the circuit court. *Kaiama v. AIG Hawai'i Ins. Co., Inc.*, 84 Hawai'i 133, 134–35, 930 P.2d 1352, 1353–54 (1997) (citation omitted). A court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Hawai'i Rules of Civil Procedure Rule 56(c) (1997); *see State v. Tradewinds Elec. Serv. & Contracting, Inc.*, 80 Hawai'i 218, 222, 908 P.2d 1204, 1208 (1995).

▮ In undertaking its analysis, a court must view the record in the light most favorable to the nonmoving party. Where the defendant is the moving party, the defendant is entitled to judgment as a matter of law if (1) viewing the record in the light most favorable to the plaintiff, no genuine issue of material fact exists with respect to one or more of the essential elements of the claim which the motion questions or of the defense which the motion seeks to establish; and (2) it is clear that the plaintiff is not entitled to recover under any discernable theory. *Giuliani v. Chuck*, 1 Haw.App. 379, 383, 620 P.2d 733, 736 (1980).

## FACTS VIEWED IN A LIGHT MOST FAVORABLE TO PLAINTIFFS

On September 19, 1994, while on vacation on the island of Maui, in the State of Hawai'i, Nejat, Mualla, Bahar, Ahmet, and Gulperi (the Atahan family) went to Makena Beach. They parked their car on a completely vacant parcel of beachfront land that was separated from the beachfront land of Makena La Perouse State Park by another parcel of beachfront land.[1] The land they parked on was owned by Muramoto. We identify the parcel of land they parked on as "Lot 1–Muramoto."

Other beachgoers had parked their cars on Lot 1–Muramoto, as Maui residents and visitors had done for years. Although Muramoto was aware that people used Lot 1–Muramoto in this way, he made no attempt to either hinder or aid such use. There were no signs or barriers present on Lot 1–Muramoto.

We identify the privately owned parcel of land adjoining Lot–1 Muramoto as "Lot 2" and we identify the Makena La Perouse State Park adjoining Lot 2 as "Lot 3–Park." The Atahan family walked from Lot 1–Muramoto to the sandy beach fronting it and then walked along the sandy beach fronting Lot 2 to the sandy beach fronting Lot 3–Park where they entered the ocean. The stretch of beach fronting Lot 3–Park is known as "Big Beach." While bodysurfing in the ocean off of "Big Beach," Nejat was injured and rendered quadriplegic.

## PROCEDURAL POSTURE OF THE CASE

On March 12, 1996, Plaintiffs sued Muramoto, alleging in their July 2, 1997 Plaintiffs' Pretrial Statement that Muramoto:

b. ... knew or in the exercise of reasonable care should have known, that the waves, sea and ocean state and/or other aquatic conditions at and in the vicinity of the Muramoto Property, were extremely dangerous (or potentially dangerous) to users of Big Beach, including Plaintiff NEJAT ATAHAN[;]

c. ... failed to take reasonable precautions to close the Muramoto Property and prevent members of the public from trespassing thereon and failed to

---

1. The Hawai'i Penal Code, Hawai'i Revised Statutes (HRS) chapter 708 (1993), states in relevant part as follows:

**PART I. GENERAL PROVISIONS RELATING TO OFFENSES AGAINST PROPERTY RIGHTS**
   § 708–800 **Definitions of terms in this chapter.** In this chapter, unless a different meaning plainly is required, the following definitions apply.

* * *

"Enter or remain unlawfully." ... A person who enters or remains upon unimproved and apparently unused land, which is neither fenced nor otherwise enclosed in a manner designed to exclude intruders, does so with license and privilege unless notice against trespass is personally communicated to the person by the owner of the land or some other authorized person, or unless notice is given by posting in a conspicuous manner.

348

reasonably warn members of the public and Plaintiffs of the extremely dangerous (and not apparent) waves, sea and ocean conditions (e.g. posting warning signs)[;]

d. ... carelessly and negligently allowed the Muramoto Property to be trespassed upon and used as a de facto parking lot for Big Beach (thereby giving an appearance that the Muramoto Property was part of Big Beach)[;]

e. ... created and maintained an attractive nuisance, and thereby carelessly and negligently encouraged, invited and induced the public upon the Muramoto Property, knowing or having reason to know that persons utilizing the Muramoto Property would use [the] same as access to Big Beach, without warning of the extremely dangerous conditions in the waters[; and]

f. ... impliedly warranted and represented that the beach areas abutting and/or in the vicinity of the Muramoto Property were safe for users.

On August 20, 1997, Muramoto moved for summary judgment (August 20, 1997 Motion). In his memorandum in support of his motion, Muramoto stated that

[t]he legal issue to be decided by the court is:

Should a landowner, who neither charges nor invites people to use his land, and who neither creates nor perpetuates a dangerous condition on an adjoining parcel, be liable to a party, who is injured on the adjoining parcel?

At the September 9, 1997 hearing on Muramoto's August 20, 1997 Motion, the circuit court answered the question in the negative, based on the "Hawaii Recreational Use Statute," HRS chapter 520 (Supp.1997).

ISSUE AND ANSWER

Nejat used Lot 1–Muramoto as a parking lot for his car and as access to "Big Beach" fronting Lot 3–Park. He was injured while in the ocean fronting "Big Beach" fronting Lot 3–Park.

The question is whether Muramoto owed a duty to the Atahan family (a) to prevent the Atahan family from parking their car on and walking over Lot 1–Muramoto to access the public beach and ocean fronting Lot 3–Park (duty to prevent) or (b) to warn the Atahan family that being in the ocean fronting Lot 3–Park was dangerous (duty to warn). Our answer to both questions is no.

OWNER OF THE BEACH AND
THE OCEAN IN HAWAI'I

The Hawai'i Supreme Court has decided that

pursuant to the decision of this court in In re Application of Ashford, 50 Haw. 314, 315, 440 P.2d 76, 77 (1968), ... the seaward boundary between private upland and public beach is "along the upper reaches of the wash of the waves, usually evidenced by the edge of vegetation or the line of debris...."

* * *

We hold as a matter of law that where the wash of the waves is marked by both a debris line and a vegetation line lying further mauka;[2] the presumption is that the upper reaches of the wash of the waves over the course of a year lies along the line marking the edge of vegetation growth. The upper reaches of the wash of the waves or at high tide during one season of the year may be further mauka than the upper reaches of the wash of the waves at high tide during the other seasons. Thus while the debris line may change from day to day or from season to season, the vegetation line is a more permanent monument, its growth limited by the year's highest wash of the waves.

County of Hawaii v. Sotomura, 55 Haw. 176, 179, 182, 517 P.2d 57, 60, 62 (1973) (footnote omitted; footnote added).

2. The Hawaiian word "mauka" is a locative noun that means "[i]nland, upland, towards the mountain, shoreward (if at sea)[.]" Mary Kawe- na Pukui & Samuel H. Elbert, Hawaiian Dictionary 242 (rev. ed.1986) (see "uka," id. at 365).

## DUTY OF OWNER OR OCCUPIER OF PREMISES—HAWAI'I LAW GENERALLY

In 1930, the Hawai'i Supreme Court decided that

[i]n considering the duty of the owner or occupier of premises to persons who come thereon, the law divides them into three categories—trespassers, licensees, and invitees. Invitees are persons who are invited to come upon the premises either expressly or (as in the case of a customer entering a store) impliedly. Licensees are persons whose presence is not invited, but tolerated. Trespassers are persons who are neither suffered nor invited to enter.

*Mutual Telephone Company v. Hawaiian Contracting Company, Limited*, 31 Haw. 296, 309 (1930) (quoting Annotation, *Attractive Nuisances*, 36 A.L.R. 37 (1925)).

In other words, Hawai'i was one of the following majority of jurisdictions.

[A] majority of jurisdictions continue to adhere to the traditional rule that status is determinative of the duty owed by an owner or occupant of premises to an entrant thereon. In such jurisdictions the status of plaintiff as a licensee is highly relevant, and the rules of law as to the duty owed to a licensee by a premises occupant are still applicable.

The traditional common-law rule in such jurisdictions, based on the theory that a landowner has the right to make use of the land as he sees fit, is that an owner or occupant of premises owes to a licensee only a duty not to harm him willfully or wantonly, intentionally, recklessly, or by gross negligence, or to set traps for him, or to expose him to danger recklessly or wantonly, or to negligently injure the licensee after discovering his peril.

62 Am.Jur.2d *Premises Liability* § 159 (1990) (footnotes omitted).

Hawai'i's position changed in 1969 when, in *Pickard v. City & County of Honolulu*, 51 Haw. 134, 452 P.2d 445 (1969), the Hawai'i Supreme Court stated that "[s]ince plaintiff-appellant herein had the permission to use the restroom, defendant owed him the duty to exercise ordinary care in maintaining the premises in a safe condition and in warning him of known defects." *Id.* at 136, 452 P.2d at 446. Notwithstanding its focus on the fact that "plaintiff-appellant herein had the permission to use the restroom[,]" the Hawai'i Supreme Court decided as follows:

We believe that the common law distinctions between classes of persons have no logical relationship to the exercise of reasonable care for the safety of others. We therefore hold that an occupier of land has a duty to use reasonable care for the safety of all persons reasonably anticipated to be upon the premises, regardless of the legal status of the individual.

*Id.* at 135, 452 P.2d at 446.

In *Gibo v. City & County of Honolulu*, 51 Haw. 299, 301, 459 P.2d 198, 200 (1969), the Hawai'i Supreme Court reaffirmed its *Pickard* rule when it stated:

Thus, under *Pickard* the factual issue is not whether an individual is an invitee or a licensee, but whether he is a person anticipated upon the premises. In this case, the City had knowledge of the use by the public of the ambulance garage area as a walkway, and under the rule of *Pickard*, the City owed the plaintiff, whether he was an invitee or a licensee, the same duty—a duty to use reasonable or ordinary care for his safety.

In *Geremia v. State*, 58 Haw. 502, 506, 573 P.2d 107, 111 (1977), the Hawai'i Supreme Court stated:

In thus abrogating the distinction between invitees and licensees we have continued to recognize that the control exercised by an occupier over the condition of his land and his opportunity to take precautions against and to warn of known dangers creates a duty of care toward his invitees and licensees[.]

In *Kaczmarczyk v. City & County of Honolulu*, 65 Haw. 612, 615–17, 656 P.2d 89, 91–92 (1982), the Hawai'i Supreme Court stated:

For an occupier of land is under a duty to exercise all reasonable care for the safety of all persons known to be, or reasonably anticipated to be, upon its premises. *Pickard v. City & County of Honolulu*, 51 Haw. 134, 452 P.2d 445 (1969). Where the

premises front upon the ocean, this responsibility extends to those swimming in the waters along the property's beach frontage. *Tarshis v. Lahaina Investment Corp.*, 480 F.2d 1019 (9th Cir.1973).[3]

\* \* \*

Undoubtedly, the City would have had a duty to warn users of Ehukai ['Ehukai] Beach park of extremely dangerous conditions in the ocean along its beach frontage which were not known or obvious to persons of ordinary intelligence, and which were known or in the exercise of reasonable care ought to have been known to the City.

\* \* \*

... There does exist a genuine dispute as to whether, in getting to the beach, the deceased and his companion entered through Ehukai ['Ehukai] Beach Park which was incontestably under the control and management of the City, or whether their route took them over property not owned or controlled by it. But this would be determinative only on the question of the City's duty to warn. . . .

(Footnote added.)

After *Kaczmarczyk*, but also in 1982, the Hawai'i Supreme Court decided as follows:

In *Geremia v. State*, 58 Haw. 502, 573 P.2d 107 (1977), this court observed that a party will be liable in tort where he voluntarily undertakes a course of affirmative conduct intended to induce another to engage in an action, and creates a false appearance of safety upon which the other relies to his detriment. And it has also been held that an owner's duty to his invitees extends to such places in or about the premises as his invitees may reasonably be expected to go in the course of his visit.

It would be unfair and unjust for the City to be charged with responsibility for the safety of every invitee who might choose to wander along the beach well beyond the geographical beach limits of the park itself. At the same time, it would be unreasonable for the City to expect that those to whom it invited to use its park and beach facilities would confine their activities strictly within the beach and waters along and adjacent to the park's beach frontage. In any event, whether the City induced, or by its conduct invited, the plaintiff to use the adjoining beach areas is a question of fact which must be determined by the jury from the circumstances. If it did, then the City would have been required to exercise reasonable care for her safety. At the very least, the City would then have been under a duty to warn the plaintiff of dangerous conditions which were not known to her or obvious to persons of ordinary intelligence, and which either were known or in the exercise of reasonable care ought to have been known to the City.

*Littleton v. State*, 66 Haw. 55, 68–69, 656 P.2d 1336, 1345 (1982) (citations and footnotes omitted).

In *Kamakawiwoole v. State*, 6 Haw.App. 235, 237–38, 718 P.2d 1105, 1107 (1986), a case involving the occupier of land rather than the owner, this court stated:

These cases [*Gibo, Tarshis, Kaczmarczyk,* and *Littleton* ] state a rule that an occupier of land fronting the beach and ocean who induces or invites a business or public invitee onto its land to engage in an action on the adjoining public beach or ocean may owe a duty to warn that invitee of the dangers involved in engaging in the action.

In 1992, the Hawai'i Supreme Court recognized status distinctions when it stated that

[u]nder ordinary circumstances, criminal acts are not reasonably to be expected, and are so unlikely in any particular instance that the burden of taking continual precautions against them almost always exceeds the apparent risk. . . .

... Although the *Pickard* rule of reasonable care regardless of status distinc-

---

**3.** This does not resolve the question of whether this duty is owed by the owner of beachfront property to persons who access the public beach and/or ocean fronting the owner's property via the beach and/or ocean fronting another person's beachfront property.

tions continues to define a landowner's duty of care in this jurisdiction, status distinctions remain important in the decision to create exceptions to the general rule that it is unreasonable to impose a duty to anticipate and control the actions of third persons. Exceptions to the general rule that there is no duty to protect may arise when justified by the existence of some special relationship between the parties. Section 314A of the Restatement [(Second) of Torts] sets forth a non-exclusive list of special relationships upon which a court may find a duty to protect. The section provides:

(1) A common carrier is under a duty to its passengers to take reasonable action

(a) to protect them against unreasonable risk of physical harm, and

(b) to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others.

(2) An innkeeper is under a similar duty to his guests.

(3) A possessor of land who holds it open to the public is under a similar duty to members of the public who enter in response to his invitation.

(4) One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a similar duty to the other.

\* \* \*

As a result of *Pickard*, this jurisdiction has not had occasion to determine whether the invitee relationship is limited by the definition of a public invitee, or that of a business visitor. In this case, where the definition of an invitee is relevant solely to determine the scope of Restatement § 314A(3), we decline to adopt the broader, public invitee definition, finding that there is no basis upon which to base a duty to protect where a landholder holds open his

land gratuitously, and does not receive or hope to receive monetary, commercial, or other tangible benefit from the invitation. *Cf. Wolsk v. State*, 68 Haw. 299, 711 P.2d 1300 (1986) (State had no duty to protect persons who were assaulted while camping in a State park).

*Doe v. Grosvenor Properties (Hawaii) Ltd.*, 73 Haw. 158, 164–65, 829 P.2d 512, 515 (1992) (citations and footnotes omitted).

Notwithstanding the broad language of the *Pickard* rule, it appears from its facts and subsequent Hawai'i Supreme Court cases that the *Pickard* rule applies to licensees and invitees and not to trespassers. Assuming the *Pickard* rule does not apply to trespassers, Muramoto still has a problem. Viewed in a light most favorable to the Atahan family, Nejat's status while using Muramoto's land to access the beach and the ocean was that of an implicitly authorized or indirectly permitted licensee.

In light of our decision with respect to the issue presented in the part following, however, we do not reach the question whether the precedent cited above imposed any relevant duty upon Muramoto with respect to the Atahan family.

## HRS CHAPTER 520 (1993) EXCEPTION

■ HRS chapter 520 (1993) became law as Act 186 on July 14, 1969. On September 19, 1994, when Nejat was injured, HRS chapter 520[4] read in relevant part as follows:

§ 520–1 **Purpose.** The purpose of this chapter is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes.

§ 520–2 **Definitions.** As used in this chapter:

(1) "Land" means land, roads, water, water courses, private ways and buildings, structures, and machinery or equipment when attached to realty, other than lands owned by the government.

**4.** HRS chapter 520 (1993), enacted as Act 186, 1969 Haw. Sess. Laws 333, was amended by Act 151, 1996 Haw. Sess. Laws 328, Act 272, 1997 Haw. Sess. Laws 603, and Act 380, § 9, 1997 Haw. Sess. Laws 1193, 1205–06.

(2) "Owner" means the possessor of a fee interest, a tenant, lessee, occupant, or person in control of the premises.

(3) "Recreational purpose" includes, but is not limited to, any of the following, or any combination thereof: hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, water skiing, winter sports, and viewing or enjoying historical, archaeological, scenic, or scientific sites.

(4) "Charge" means the admission price or fee asked in return for invitation or permission to enter or go upon the land.

* * *

### § 520–3  Duty of care of owner limited.

Except as specifically recognized by or provided in section 520–6, an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes.

### § 520–4  Liability of owner limited.

Except as specifically recognized by or provided in section 520–6, an owner of land who either directly or indirectly invites or permits without charge any person to use such property for recreational purposes does not thereby:

(1) Extend any assurance that the premises are safe for any purpose.

(2) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed.

(3) Assume responsibility for or incur liability for any injury to person or property caused by an act of omission or commission of such persons.

* * *

### § 520–6  Persons using land.

Nothing in this chapter shall be construed to:

(1) Create a duty of care or ground of liability for injury to persons or property.

(2) Relieve any person using the land of another for recreational purposes from any obligation which the person may have in the absence of this chapter to exercise care in the person's use of such land and in the person's activities thereon, or from the legal consequences of failure to employ such care.

■ Plaintiffs contend that the language of HRS chapter 520 limits its protection to the boundaries of the owner's land and operates to save owners harmless from liability for injuries occurring on their own land, but not from liability for injuries occurring elsewhere. With respect to the landowner's duty to warn described in *Kaczmarczyk v. City and County of Honolulu, supra,*[5] and the landowner's alleged duty to prevent, we disagree.

We rely on HRS § 520–4(a)(2). As noted above, it states in relevant part that

an owner of land who either directly or indirectly invites or permits without charge any person to use such property for recreational purposes does not thereby:

* * *

(2) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed.

Viewed in a light most favorable to the Atahan family, Nejat was at best a person who was indirectly permitted without charge to use Muramoto's land for the recreational purpose of accessing the public beach and ocean. Pursuant to HRS § 520–4(a)(2), Nejat was neither "an invitee or licensee to whom a duty of care is owed." The duty to warn and the alleged duty to prevent both arise out of the "duty of care." It follows

---

5. In *Kaczmarczyk v. City and County of Honolulu,* 65 Haw. 612, 616, 656 P.2d 89, 91 (1982), the plaintiff's theory was "that the existence of the powerful, surging surf represented an unappar-
ent, dangerous condition which [the city] knew about and of which it failed to adequately warn her."

that Nejat was not an invitee or licensee to whom Muramoto owed a duty to prevent or warn.

Although our holding is based on the unambiguous language of HRS § 520–4(a)(2), we note that although HRS § 520–2 defines land as including both land and water, it states that its purpose "is to encourage owners of land to make land and water areas available to the public for recreational purposes[.]" This language suggests an intent to encourage owners of land to make the ocean available to the public for recreational purposes.

We further note that legislative history shows that the "water areas" referred to in HRS § 520–1 (1993) include the public beach and ocean. In 1969, the Senate Committee on Lands and Natural Resources submitted Senate Standing Committee Report No. 534 on S.B. No. 56 which states in relevant part as follows:

"A BILL FOR AN ACT TO ENCOURAGE LANDOWNERS TO MAKE LAND AND WATER AREAS AVAILABLE TO THE PUBLIC BY LIMITING LIABILITY IN CONNECTION THEREWITH.

* * *

Your Committee has amended this bill by deleting section 6 which provides that an owner who provides a public right-of-way through his land to beach areas shall maintain such right-of-way, because it creates an undue burden on landowners.

Finally, we note that the express purpose of encouraging owners of land to make the ocean available to the public for recreational purposes would be frustrated by concluding that HRS chapter 520 protects only against claims for injuries occurring within the boundaries of the owner's land. We agree with United States District Judge Martin Pence that

[i]t would be preposterous to hold a landowner liable for injuries to anyone using the beach and ocean in front of his land—an area solely owned and controlled by the state and county—when under Chapter 520, if he had owned and controlled that beach and water he would have no liability at all.

*Viess v. Sea Enters. Corp.*, 634 F.Supp. 226, 229 (D.Hawai'i 1986).

In light of the above, we conclude that HRS chapter 520 abolished any duty to prevent or warn that Muramoto may otherwise have owed to the Atahan family with respect to their use of Lot 1–Muramoto as a place to park their car, access the public beach fronting Lot 1–Muramoto, Lot 2, and Lot 3–Park, and access and use the ocean fronting the beach fronting Lot 3–Park for recreational purposes.

## CONCLUSION

Accordingly, we affirm the circuit court's September 23, 1997 "Judgment By: Order Granting Defendant Hidehiro Muramoto's Motion for Summary Judgment Filed August 20, 1997."

Opinion of ACOBA, J., concurring in part and dissenting in part.

### I.

### A.

On March 12, 1996, Plaintiff–Appellant Mualla Atahan (Atahan)[1] filed a complaint against Defendant–Appellee Hidehiro Muramoto (Muramoto), alleging, *inter alia:*

On or before September 19, 1994, [Muramoto] knew or in the exercise of reasonable care should have known, that the waves, sea and ocean state and/or other aquatic conditions at and *in the vicinity of the [p]roperty,* were dangerous or potentially dangerous to swimmers or bathers, particularly to those inexperienced tourists and visitors living outside the State of [Hawai'i], including [Atahan].

*[Muramoto] herein carelessly and negligently allowed the [p]roperty to be trespassed upon by members of the general public,* and carelessly and negligently *allowed the [p]roperty to be used as a de*

1. Although Plaintiff–Appellant Mualla Atahan (Atahan) is one of several plaintiffs-appellants, for the sake of convenience, I refer only to Atahan.

*facto parking lot for Big Beach [ (hereinafter Mākena Beach Park) on the island of Maui], thereby* carelessly and negligently *representing the [p]roperty to be part of [Mākena] Beach Park, with knowledge or having reason to know that members of the public would so assume [Muramoto]'s property was a parking lot* for and a part of the [Mākena] Beach Park. . . .

[Muramoto]'s acts and/or failure to act as herein described, carelessly and negligently *encouraged, invited and induced* tourists, visitors and *members of the public upon the [p]roperty*, with [Muramoto] then knowing or having reason to know that persons *utilizing the [p]roperty would use same as access to [Mākena Beach Park]*, and [Muramoto] knowing or being reasonably charged with knowledge that users of said [Mākena] Beach Park were exposed to serious bodily injury and damage at said [Mākena] Beach Park. . . .

(Emphases added.) Atahan alleged "as a direct and proximate result" of Muramoto's "fail[ure] to fence, barricade and block the [p]roperty or take other reasonable steps and precautions to prevent members of the public from trespassing thereon and exposing themselves to injury . . . [Atahan] sustained injuries. . . ."

On March 15, 1996, Atahan filed a "Request to Exempt Case From the Court[-]Annexed Arbitration Program." In this request, Atahan admitted that *"[w]hile swimming in the waters fronting [Mākena] . . . Beach Park, . . .* [Atahan] was knocked down by a wave and sustained serious permanent injuries." (Emphasis added.)

On July 2, 1997, Atahan filed his pretrial statement. In that pleading, Atahan stated that he

arrived at an open dirt lot located in the area called [Mākena Beach Park]. [Atahan] observed numerous cars parked in that lot and decided to park there to walk to the beach.

*The lot where [Atahan] parked [his] vehicle was the Muramoto [p]roperty . . . .* [Atahan] got out of [his] car and walked across the Muramoto [p]roperty to the sand. Once on the beach, [he] proceeded

north on the sand in the [Kīhei] direction. . . .

(Emphasis added.) Atahan once again admitted that "he was struck by a wave while swimming in the waters fronting [Mākena Beach] Park. . . ."

### B.

On August 20, 1997, Muramoto filed a motion for summary judgment. Affidavits from Muramoto and John C. Patterson (Patterson), a real estate broker familiar with Muramoto's property, were submitted with the summary judgment motion. In his affidavit, Muramoto stated that "[w]hen he purchased the parcel, it was a vacant lot[,]" he "made no changes to it[,]" he "took no action to discourage or encourage people from crossing the parcel[,]" and he "neither asked for nor received any money from people who may have crossed the parcel." Muramoto also averred that he "took no action to try to cause people to swim in the ocean in front of or near the parcel."

In his affidavit, Patterson asserted he "ha[d] not represented [Muramoto] in connection with any real estate transactions[,]" and "as a real estate broker and as an area resident," he was "familiar" with Muramoto's property. Patterson reported that "[a]t the time [Muramoto] purchased the parcel, it was a vacant lot[,]" he "periodically observed cars parked on the parcel, and persons crossing the parcel to access the beach[,]" and he "saw nothing to indicate that [Muramoto] was trying to prevent people from accessing the beach by crossing over his parcel, nor that he was charging a fee for such access." Patterson related that attached to his affidavit was a

true and correct copy of a Tax Map in which [Muramoto's] parcel is labeled, "Lot 3." [Muramoto]'s attorney . . . [had] pointed out the area in the ocean where [Atahan] alleged that he was injured [and that] [t]he area is not in front of [Muramoto's] parcel, but is rather in front of the parcel labeled, "Park—State Property."

On August 28, 1997, Atahan filed his opposition memorandum to Muramoto's motion, reiterating the allegations in his complaint. Atahan did not file any supporting affidavits.

Muramoto filed his "Responsive Pretrial Statement" on August 28, 1997. In his pretrial statement Muramoto indicated that Atahan "ha[d] a separate lawsuit pending against the State of [Hawai'i] and County of Maui arising from the same occurrence." With respect to his property, Muramoto reiterated aversions in his and in Patterson's affidavit.

On September 9, 1997, the second circuit court (the court) held a hearing on the motion for summary judgment. At the conclusion of the hearing, the court stated:

> I'm going to grant the motion for summary judgment based on ... [c]hapter 520 of the [Hawai'i] Revised Statutes [ (HRS) ] finding that even if there were a common[-]law duty, that [c]hapter 520 excludes the movant from responsibility and liability. However, I'm not finding that there is any liability under even common law.

On September 23, 1997, the court filed a written order granting Muramoto's motion for summary judgment.

Both affidavits from Muramoto and Patterson were properly sworn to and certified, and thus were entitled to be considered with respect to the motion for summary judgment. *See* Hawai'i Rules of Civil Procedure (HRCP) Rule 56(e). While not sworn to and certified, Atahan's statements that he trespassed onto Muramoto's property and that he was injured in the waters fronting the adjacent parcel and not Muramoto's property may be taken as admissions for the purposes of the summary judgment motion. Facts which are undisputed in the memoranda submitted by both parties constitute "admissions on file" which may be considered with respect to a motion for summary judgment. *Gonsalves v. First Ins. Co. of Hawaii*, 55 Haw. 155, 161, 516 P.2d 720, 724 (1973) (holding that " 'admissions in the brief of the party opposing the motion (for summary judgment) may be used in determining that there is no genuine issue as to any material fact, since they are functionally equivalent to "admissions on file," which are expressly mentioned in [HRCP] Rule 56(c)' " (quoting 10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil*

§ 2723, at 490 (1973))). *See* HRCP Rule 56(c).

## II.

The majority agrees with the court and holds that "HRS chapter 520 [ (1993) ] abolished any duty that Muramoto would otherwise have owed to [Atahan] with respect to [his] use of [Muramoto's property] as a place to park [his] car, access [to] the public beach fronting [Muramoto's property, the lot adjacent to Muramoto's property, and the State property], and access [to] the ocean fronting the beach fronting [Mākena Beach Park]." Majority opinion at 353, 984 P.2d at 112. Because it is undisputed that Atahan was not injured on Muramoto's lot, but "while swimming in ocean waters fronting [Mākena Beach] Park[,]" I must conclude that HRS chapter 520 does not immunize Muramoto from potential liability to Atahan, and thus I respectfully dissent.

### A.

#### 1.

HRS chapter 520 is entitled "Landowner Liability," and HRS § 520-1 states that "[t]he purpose of [HRS chapter 520] is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability towards persons entering thereon for such purposes."

The language of HRS chapter 520 makes clear that the land and water areas affected are those "owned" by the owner. The definitions of terms used in HRS chapter 520 are set forth in HRS § 520-2 which provides, in pertinent part:

> (1) *"Land"* means land, roads, *water*, water courses, private ways and buildings, structures, and machinery or equipment when attached to realty, *other than lands owned by the government.*

> (2) *"Owner"* means the possessor of a fee interest, a tenant, lessee, occupant, or person in control of the premises.

> (3) *"Recreational purpose"* includes but is not limited to, any of the following, or any combination thereof: hunting, fishing,

swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, water skiing, winter sports, and viewing or enjoying historical, archaeological, scenic, or scientific sites.

(Emphases added.)

HRS § 520–3 states, in relevant part, that "an owner of *land* owes no duty of care to keep the *premises safe for entry or use* by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity *on such premises* to persons entering for such purposes[.]" (Emphases added.)

Further, HRS § 520–4 states:

**Liability of owner limited.** Except as specifically recognized by or as provided in section 520–6, *an owner of land* who either directly or indirectly invites or permits without charge any person *to use such property* for recreational purposes does not thereby:

(1) Extend any assurance that *the premises* are safe for any purpose.

(2) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed.

(3) Assume responsibility for or incur liability for any injury to person or property caused by an act of omission or commission of such persons.

(Emphases added.)

As stated above, HRS § 520–3 expressly relieves an owner of land from a duty of care toward and a duty to warn persons entering "the premises" for "recreational purposes." Similarly, HRS § 520–4 relieves "an owner of land" from ensuring the safety "of the premises," or from owing any duty of care or responsibility toward any person who "use[s] such property."

While "land," as defined in HRS § 520–2 includes "water," there is no indication in the statute that the legislature intended that term to include the ocean itself. Even if the term "water" were broadly construed to include the ocean, the phrase "other than lands owned by the government" would qualify the term and exclude the ocean and the land under it.

It is undisputed "that '[t]he State of [Hawai'i] has care and control of all water and ocean below the high water mark (or vegetation line)[.]' " *Littleton v. State*, 66 Haw. 55, 65, 656 P.2d 1336, 1344 (1982). *See also, Birmingham v. Fodor Travel Publications, Inc.*, 73 Haw. 359, 376 n. 11, 833 P.2d 70, 79 n. 11 (1992). Thus, the ocean itself and the land beneath it and seaward of the vegetation line are owned by the government, and by the terms of HRS chapter 520, are expressly exempted from its purview.

2.

HRS chapter 520 also requires that an owner be "the possessor of a fee interest, a tenant, lessee, occupant, or a person in control of the premises" pursuant to HRS § 520–2. Obviously, Muramoto cannot be considered an "owner" of the ocean within the meaning of that defined term.

While the words "recreational purpose" include activities that may take place in the ocean, activities such as "fishing," "swimming," "boating," and "water skiing" may also take place on or in bodies of water other than the ocean. In any event, such recreational purposes are covered only insofar as they take place on premises "other than the land owned by the government." If "water" is construed to include the ocean, the ocean is water "owned by the government" and thus excluded from the provisions of HRS chapter 520.

Finally, under HRS chapter 520, a landowner's relief from liability extends to the use of the landowner's "property" for recreational activities "*on* such premises." HRS § 520–3 (emphasis added). Atahan admits his injuries did not take place on Muramoto's lot. Therefore, HRS chapter 520 is simply inapplicable to Muramoto's potential liability.

B.

Support for the foregoing interpretation is found in the apparent model for HRS chapter 520. The Committee of State Officials on Suggested State Legislation of the Council of State Governments developed a model act concerning landowner liability entitled "Public Recreation on Private Lands: Limitations

on Liability" (the Model Act). 24 Suggested State Legislation 150 (1965). HRS chapter 520 was apparently derived from, and is substantially similar to the Model Act.

The introduction to the Model Act indicates that it immunizes landowners from liability for occurrences on *their property:* "The suggested act which follows is designated to encourage availability of private lands by limiting liability of owners[,]" because "in those instances where private owners are willing to make *their land* available to members of the general public without charge, it is possible to argue that every reasonable encouragement should be given to them." *Id.* (emphases added).

Under the Model Act, the definitions of land are the same as set forth under HRS chapter 520 except for the express exclusion of "lands owned by the government" found in HRS § 520–2: " 'Land' means land, roads, water, watercourses, private ways and buildings, structures, and machinery or equipment when attached to the realty." Model Act, § 2(a). It appears that no other state except Hawai'i has specifically exempted "lands owned by the government" from its statutory definition of land. Indeed, much of the case law in other jurisdictions focuses on whether, under their versions of the act, the government is entitled to limited liability for injuries occurring on its property.[2] However, by legislative provision, HRS chapter 520 expressly exempts public "land" from coverage,

and thus removes the ocean from the scope of the chapter.

### C.

I see nothing in HRS § 520–4(a)(2), cited by the majority, to warrant a different interpretation. That section refers to "owner," "land," and "such property," all of which as defined or apparent from the text, do not confer immunity for injuries in the ocean.

Nor do I find the title of a bill which was the subject of a 1969 committee report persuasive in light of the express provisions of the act. Much as I recognize the desire to extend immunity to non-government entities expressed in *Viess v. Sea Enters. Corp.,* 634 F.Supp. 226 (D.Haw.1986), I cannot agree that the language of HRS chapter 520 extends so far.

### III.

When it granted the motion for summary judgment, the court stated that it was "not finding that there is any liability under even common law." On appeal, the majority does "not reach the question of whether the precedent cited [in its opinion] imposed any relevant duty upon Muramoto with respect to [Atahan]." Majority opinion at 351, 984 P.2d at 110. Since I believe that HRS chapter 520 is inapplicable and would vacate the court's order granting summary judgment on that basis, I do reach the question of whether the case law in this jurisdiction imposes a

---

**2.** The *Supreme Court of Louisiana* recognized that the legislature "adopted, essentially without change" the Model Act. *Monteville v. Terrebonne Parish Consol. Gov't,* 567 So.2d 1097, 1101 (La. 1990). It noted, "The purpose of the Recreational Use Statutes, their legislative history and the state of the law at the time of the original enactment indicate that the legislature intended to confer immunity only on owners of private lands. The texts of the statutes are silent on the subjects of sovereign, state, or governmental immunity." *Id.* at 1102. Moreover, "[s]ince public lands are always acquired, and usually held, for the use of the public, it is unlikely that the legislative object in such legislation was to encourage the state to permit the people to use public property." *Id* at 1103 (citations omitted). *See Conway v. Town of Wilton,* 680 A.2d 242, 249–53 (Conn.1996) (holding that because the legislature's sole motive in enacting the "Recreational Land Use Act" which "parrot[ed]" the Model Act was "to encourage

private citizens to donate their land" and that "[t]here [was] no indication that the legislature was seeking to permit a municipality to have immunity for responsibilities arising out of property that it already owned," it "decline[d] to read the statute to extend the immunity beyond private landowners"); *See also Stamper v. Kanawha Co. Bd. of Ed.,* 191 W.Va. 297, 445 S.E.2d 238 (1994) ("agree[ing] with the [Louisiana court] that the Model Act was designed to benefit private landowners" in construing its recreational use statute which was also an adoption, without change, of the Model Act). *Contra Watson v. City of Omaha,* 209 Neb. 835, 312 N.W.2d 256 (1981) (concluding that since "no limitation [was placed] upon ... the definition of 'owner' in the Recreation Liability Act, ... the intent of the [l]egislature ... was to grant the same rights and privileges to governmental and private landowners alike").

duty on Muramoto in favor of Atahan.[3] I conclude it does not, and therefore would remand the case with instructions to the court to enter summary judgment on behalf of Muramoto on the basis that he owed no common-law duty to Atahan.

### A.

Hawai'i abolished the common-law distinctions traditionally made in evaluating landowner liability in *Pickard v. City and County of Honolulu*, 51 Haw. 134, 452 P.2d 445 (1969). There, the Supreme Court of Hawai'i concluded that the City was an "occupier" of the land on which the plaintiff was injured, and rejected the trial court's finding that the plaintiff was "a licensee as a matter of law and therefore not entitled to defendant's duty of ordinary care." *Id.* The supreme court reasoned that "the common[-]law distinctions between classes of persons have no logical relationship to the exercise of reasonable care for the safety of others[,]" because " '[r]easonable people do not ordinarily vary their conduct depending upon ... the status of the injured party as a trespasser, licensee, or invitee in order to determine whether the landowner has a duty of care[.]' " *Id.* at 136, 452 P.2d at 446 (quoting *Rowland v. Christian*, 69 Cal.2d 108, 70 Cal.Rptr. 97, 104, 443 P.2d 561, 568 (1968)).

Shortly thereafter, the supreme court confirmed its *Pickard* holding in *Gibo v. City and County of Honolulu*, 51 Haw. 299, 459 P.2d 198 (1969). The supreme court stated that *Pickard* "refused to recognize the common[-]law distinctions between licensees and invitees and the different degree of care owed them by an occupier of land[,]" *id.* at 301, 459 P.2d at 200, and reiterated that "[a]n occupier of land has a duty to use reasonable care for the safety of all persons reasonably anticipated to be upon the premises, regardless of the legal status of the individual." *Id.*

Accordingly, both *Pickard* and *Gibo* abolished the common-law categories of persons injured on a landowner or occupier's *premises* for purposes of defining the duty owed to such persons.

### B.

The supreme court confronted the issue of non-landowner or non-occupier liability for a premises injury in *Geremia v. State*, 58 Haw. 502, 503, 573 P.2d 107, 109 (1977), where the plaintiffs sought damages from the State of Hawai'i for the death of their son. The State's involvement with the land consisted of the following:

> [W]ith the permission of the landowner, [it] improved a parking area at the intersection of the access road and the trail, erected a direction sign at the intersection of the access road and the main highway, erected a sign warning visitors to lock their cars at the parking lot, improved and maintained the trail itself, and included the Slide on several maps and State[-]sponsored visitor information brochures.

*Id.* at 504, 573 P.2d at 109–10.

Acknowledging that it "no longer allow[ed] the common[-]law distinction between invi-

---

**3.** The majority ends its discussion of the case law with *Doe v. Grosvenor Properties (Hawaii) Ltd.*, 73 Haw. 158, 829 P.2d 512 (1992), explaining that there, "the Hawai'i Supreme Court recognized status distinctions[.]" Majority opinion at 350, 984 P.2d at 109.

Because *Doe* involved the defendants' tort liability in a third-party assault case, I do not believe it is applicable to our discussion.

In *Doe*, the issue was whether the defendants negligently failed to protect the plaintiff, an employee of a tenant in their building, from being assaulted in an elevator. *Id.* at 160, 829 P.2d at 514. In deciding the question of duty, the supreme court explained that "[a]lthough the *Pickard* rule of reasonable care regardless of status distinctions continue to define a landowner's duty of care in this jurisdiction," common-law "status distinctions remain important in the decision to create exceptions to the general rule that it is unreasonable to impose a duty to anticipate and control the actions of third persons." *Id.* at 163, 829 P.2d at 515.

To determine whether a person has established a "special relationship" under section 314A of the *Restatement (Second) of Torts* (1965) with another and thus owed him a duty of protection from the "actions of third persons[,]" the supreme court decided in *Doe* that

> where the definition of an invitee is relevant solely to determine the scope of *Restatement* § 314A(3), ... we decline to adopt the broader, public invitee definition, finding that there is no basis upon which to base a duty to protect where a landholder holds open his land gratuitously, and does not receive or hope to receive monetary, commercial, or other tangible benefit from the invitation.

73 Haw. at 163, 829 P.2d at 515 (citations omitted).

tees and licensees to be determinative of the scope of the occupier's liability," *id.* at 506, 573 P.2d at 110–11 (citations omitted), the supreme court stated that "the existence of this special rule of liability ... has no bearing upon the liability of a non-occupier." *Id.* But, the supreme court pointed out that the State may have owed "a *duty of care which has arisen quite independently of the occupier's duty.*" *Id.* at 506, 573 P.2d at 111 (emphasis added).

We may assume, without expressing an opinion, that the acts of the State in improving the parking area and the trail [to the Slide], erecting signs and including the Slide on official information maps and brochures were sufficient to have enabled the court to find *a course of conduct which constituted an invitation to use the Slide.* Similarly, we may assume that *the State's actions* conveyed a representation that would create a false sense of safety in the minds of those who were thereby *induced* to use the Slide.

*Id.* at 509, 573 P.2d at 112 (emphases added). According to the supreme court, "one who gratuitously acts to expose another person to danger must observe ordinary care in so doing, notwithstanding that he would have been wholly free from obligation if he had refrained from acting." *Id.* Thus, under *Geremia,* liability for a premises injury may be imposed on one who is not an owner or occupier of the premises but whose course of conduct constitutes an invitation or inducement to use the premises.

### C.

Five years later, the supreme court decided *Kaczmarczyk v. City and County of Honolulu,* 65 Haw. 612, 656 P.2d 89 (1982). There, the plaintiffs had filed suit against the State[4] and the City and County of Honolulu after their son drowned in the ocean waters off 'Ehukai Beach Park. *Id.* at 613, 656 P.2d at 91.

The supreme court reiterated the principle that "an occupier of land is under a duty to exercise all reasonable care for the safety of all persons known to be, or reasonably anticipated to be, upon its premises." *Id.* (citing *Pickard,* 51 Haw. 134, 452 P.2d 445). It then expanded an occupier's duty, concluding that this responsibility extended "[w]here the premises front upon the ocean ... to those swimming in the waters along the property's beach frontage." *Id.,* 656 P.2d at 92 (citing *Tarshis v. Lahaina Inv. Corp.,* 480 F.2d 1019 (9th Cir.1973)). Therefore, the supreme court found a duty was owed by the City to the users of its park who were injured in the ocean along the park's beach frontage:

Undoubtedly, the City would have had a duty *to warn users of ['Ehukai] Beach Park of extremely dangerous conditions in the ocean along its beach frontage* which were not known or obvious to persons of ordinary intelligence, and which were known or in the exercise of reasonable care ought to have been known to the City.

*Kaczmarczyk,* 65 Haw. at 615, 656 P.2d at 92 (emphases added) (citations omitted).

The Hawai'i Supreme Court issued *Littleton* two days after *Kaczmarczyk.* In *Littleton,* the plaintiff was injured after a telephone pole in the ocean struck her while she was picking seaweed along the shoreline. 66 Haw. at 56, 656 P.2d at 1339. The plaintiff sued both the State and the City and County of Honolulu. The supreme court held that because the State had care and control of the ocean, it owed a duty of care to the plaintiff. *Id.* at 65, 656 P.2d at 1344. As to the City, the supreme court found it had a statutory duty to clear "debris" from the shore and thus "may be held liable." *Id.* at 67, 656 P.2d at 1344.

In the alternative, the plaintiff had alleged "responsibility on the part of the City by reason of its having induced, or by its conduct invited its park patrons to make use of the adjoining beach areas in furtherance of their enjoyment of the City's own park premises." *Id.* at 68, 656 P.2d at 1345. The supreme court found *Geremia* applicable:

In *Geremia,* ... this court observed that a party will be liable in tort where he [or

4. On appeal, the lower court's dismissal of the State on statute of limitations grounds was affirmed.

she] voluntarily undertakes a course of affirmative conduct intended to induce another to engage in an action, and creates a false appearance of safety upon which the other relies to his [or her] detriment. And it has also been held that *an owner's duty to his [or her] invitees extends to such places in or about the premises as his [or her] invitees may reasonably be expected to go in the course of the visit.*

*Littleton,* 66 Haw. at 68, 656 P.2d at 1345 (emphases added) (citations omitted). The supreme court then indicated that an owner or occupier's duty of care may extend beyond the beach frontage of the subject property to "*adjoining* beach areas." (Emphasis added.)

In a footnote, the supreme court stated that an invitation to use adjoining beach areas may be "implied":

An invitation may be implied from a continued and general custom in using the premises by the patrons of the business. The nature of the use and the extent of the premises covered by the implied invitation to use may be determined by the continued and general custom of the patrons of the place.

5. *McKinney v. Adams,* 68 Fla. 208, 66 So. 988, 992 (1914) was erroneously cited as having been decided in 1944. *See Littleton v. State,* 66 Haw. 55, 69 n. 4, 656 P.2d 1336, 1345 n. 4 (1982).

6. The definition of implied invitation in *Littleton* was from *McKinney,* where the plaintiff administratrix of the decedent's estate brought a claim against the defendant who "was operating and maintaining a certain public bathhouse and bathing pavilion where suits were furnished for hire or rent." 66 So. at 988. The bathhouse and bathing pavilion "were situated at or near the waters of the Atlantic Ocean[.]" *Id.* The decedent "rent[ed] from the ... defendant a bathing suit[,]" *id.* at 989, and then "drowned in the waters of the Atlantic Ocean near the bathhouse and bathing pavilion...." *Id.* at 990.

In reversing dismissal of the case, the Florida Supreme Court indicated that one who invites the use of public waters for profit must exercise due care to prevent injury to his patrons even though the waters are public:

Where one assumes to *offer the use of public waters for purposes of profit* by establishing bathhouses or dressing rooms on the shore and furnishing bathing suits for hire *to persons who are expressly or impliedly invited to use the bathing suits by bathing or swimming in the*

*Id.* at 69 n. 4, 656 P.2d at 1345 n. 4 (citing *McKinney v. Adams,* 68 Fla. 208, 66 So. 988 (Fla.1914 [5])).[6] Thus, in *Kaczmarczyk* the supreme court extended the potential liability of an owner or occupier of beachfront land to include the expected use of ocean waters *fronting* the subject property. In *Littleton,* liability was extended to use of *adjoining* beach areas where the owner or occupier could be said to have invited such use under the *Geremia* rationale.

In *Kamakawiwoole v. State,* 6 Haw.App. 235, 239–40, 718 P.2d 1105, 1108–09 (1986), citing *Kaczmarczyk* and *Littleton,* this court said that the operation of a public park fronting the public beach and ocean may impliedly constitute an invitation to "swim in the public ocean" and "walk upon the public beach where the accident[s] occurred."

### D.

In *Birmingham,* 73 Haw. 359, 833 P.2d 70, the supreme court further clarified the duty owed to plaintiffs for injuries occurring on the beach and in the ocean. In that case, the plaintiff was injured while body surfing in ocean waters off Kekaha Beach on the island of Kaua'i. *Id.* at 363, 833 P.2d at 73. The

*public waters,* and a patron uses the waters in the usual and ordinary way consistent with the express or implied invitation, and without his fault is injured because of the unsafe condition of the premises on which patrons are invited to bathe or swim, or because of the negligence of the proprietor in performing his duties to patrons, the one so offering the use of the waters for profit may be liable in damages for such injury.

*The liability proceeds from the duty imposed by law upon one who thus assumes to offer the use of public waters for profit* to exercise due care to prevent injury to patrons who without fault use the waters in the customary way.... *Though the waters are public and no governmental authority be expressly given to so offer them for use, one who assumes to so offer the use of the waters also assumes the legal duties and liabilities that are commensurate with such offer of the use.* The nature of the use fixes the duties and correlative liabilities. An invitation may be implied from a continued and general custom in using the premises by the patrons of the business. The nature of the use and the extent of the premises covered by an implied invitation to use may be determined by the continued and general custom of the patrons of the place.

*Id.* at 992 (emphases added).

beach land fronting the ocean was owned by the State. *Id.* The State transferred this parcel to the County of Kaua'i to use as an addition to Kekaha Beach Park. *Id.* At the time of the accident, these lands were controlled and managed by the County. *Id.* The plaintiff brought suit against the State and the County. *Id.* at 362, 833 P.2d at 72.

The supreme court determined that the State was not in control of the parcels, but as the owner of the ocean and all the beach area up to the high water mark, the supreme court held that under the "*Littleton* rule," the State owed only a duty as to "unnatural condition[s]" of which it had "actual or constructive notice." *Id.* at 378, 833 P.2d at 80.

As to the County, whose liability was based on "being the owner and occupier of Kekaha Beach Park," *id.* at 380, 833 P.2d at 81, it owed " 'a duty to warn users [of the park] ... of extremely dangerous conditions in the ocean along its beach frontage which were not known or obvious to persons of ordinary intelligence,' " and " 'in the exercise of reasonable care ought to have been known to the [occupier].' " *Id.* (quoting *Kaczmarczyk*, 65 Haw. at 615, 656 P.2d at 92). *Birmingham* thus emphasized that as to the ocean, the State's duty was owed only as to "unnatural conditions" and an owner or occupier's duty was owed as to "extremely dangerous conditions."

## IV.

Since Atahan was not injured on Muramoto's lot, Muramoto did not owe a landowner's or occupier's duty of care for persons injured "upon the premises," *Gibo*, 51 Haw. at 301, 459 P.2d at 200, as might otherwise be imposed under the rule employed in *Pickard*, 51 Haw. at 135, 452 P.2d at 446, and *Gibo*, 51 Haw. at 301, 459 P.2d at 200. Similarly, since Atahan was not injured in the ocean fronting Muramoto's lot, the extension of that duty "to those swimming in the waters along the property's beach frontage," as recognized in *Kaczmarczyk*, 65 Haw. at 615, 656 P.2d at 92, would not apply in this case. However, duty might be owed to Atahan for

injuries suffered in adjoining beach areas. *Littleton*, 66 Haw. at 68, 656 P.2d at 1345.

Here, the injury occurred in the ocean fronting Mākena Beach Park. This would make Muramoto a "non-occupier" of the injury site. In such a case, Muramoto's "occupier status [need] not [be] a prerequisite to the existence of the [potential] duty for which the plaintiffs [have] contended[,]" *Geremia*, 58 Haw. at 508, 573 P.2d at 112. Liability would attach, as stated in *Geremia* and reiterated in *Littleton*, if Muramoto "voluntarily undertook a course of affirmative conduct intended to induce the plaintiff to engage in an action, and also created a false appearance of safety upon which the plaintiff relied to his or her detriment." *Id.*

Atahan did not establish facts by affidavit or otherwise demonstrating Muramoto affirmatively induced or encouraged the public to use his lot as a parking lot for or as access to the beach and ocean abutting the adjacent public park. In contrast to the actions of the State in *Geremia*, which might be construed as *affirmative* conduct, Muramoto did nothing to improve facilities for or to publicize use of the ocean fronting the public park. Additionally, Atahan failed to set forth facts showing Muramoto engaged in any conduct which created a false appearance of safety in the ocean where the injury took place. Rather, Atahan's complaint premised liability on Muramoto's failure to prevent cars from parking on his lot and persons like Atahan from using it to access the ocean, that is, to prevent persons from trespassing on his property.

## V.

Atahan concedes in his complaint that he was neither an invitee or licensee. Instead, he admits that he "trespassed" onto Muramoto's land. As the majority points out, " '[t]respassers are persons who are neither suffered nor invited to enter [another's premises].' " Majority opinion at 349, 984 P.2d at 108 (quoting *Mutual Tel. Co. v. Hawaiian Contracting Co.*, 31 Haw. 296 (1930).[7]

7. Under traditional common law, "[t]he observance of due care by an owner or occupant of premises toward a trespasser requires no affir-

mative conduct to render the premises safe for the trespasser's use, but ... the possessor must refrain from injuring the trespasser unnecessari-

Nothing in the case law reviewed implies that in the absence of *Geremia* facts an owner or occupier of land owes a duty to prevent trespassing in order to protect against the risk that the trespasser would be injured in the ocean fronting an adjoining parcel. There appears to be no justification for imposing such a duty. "Duty ... is a legal conclusion which depends upon 'the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.'" *Rodrigues v. State*, 52 Haw. 156, 170, 472 P.2d 509, 518 (1970) (quoting Prosser, *Torts* § 53 at 332 (3d ed.1964)); *Tabieros v. Clark Equip. Co.*, 85 Hawai'i 336, 353, 944 P.2d 1279, 1296 (1997). In this record, I find nothing compelling of a policy nature in the argument put forth by Atahan; that is, that a duty should be imposed on Muramoto to prevent Atahan from doing what Atahan was already legally prohibited from doing.

## VI.

Not only must Atahan demonstrate that he was "impliedly invited" onto Muramoto's property for purposes of obtaining access to the ocean,[8] but under the test set forth in *Birmingham*, Atahan must also show that "the ocean conditions were extremely dangerous conditions which were not readily apparent to persons of ordinary intelligence." 73 Haw. at 382–83, 833 P.2d at 82 (internal quotation marks and citation omitted).

Assuming *arguendo* that there was an implied invitation, there are no *facts* in the record demonstrating that the ocean conditions which resulted in Atahan's injuries were "extremely dangerous conditions." *Id.* In his complaint, Atahan alleged only that "the waves, sea and ocean state and/or other

aquatic conditions at and in the vicinity of [Muramoto's] [p]roperty, were dangerous or potentially dangerous to swimmers or bathers...." In his pretrial statement, Atahan went further and alleged that "[a]s the owner of ocean front property [Muramoto] knew or in the exercise of due care should have known, that the waves, sea, ocean state and/or other aquatic conditions in front of the neighboring [Mākena Beach Park] were extremely dangerous." Atahan's memorandum in opposition to Muramoto's motion for summary judgment states that Muramoto "fail[ed] to warn [Atahan] and other users of the extremely dangerous (and not apparent) ocean conditions in the waters fronting and/or adjacent to [Muramoto's] [p]roperty and [Mākena Beach Park]...." Despite Atahan's allegations that the ocean conditions were "extremely dangerous" and "not apparent," Atahan provided no factual support for these assertions. He submitted no affidavits or facts tending to demonstrate that the ocean conditions were in fact "extremely dangerous" and "not apparent" to persons of ordinary intelligence. In sum, Atahan failed to satisfy the second requirement of the *Birmingham* test.

## VII.

For the foregoing reasons, I dissent from the majority's holding that HRS chapter 520 applies to the facts of this case, and I would vacate the court's order granting summary judgment on that ground. However, I would hold that Muramoto owed Atahan no duty under the common law and would affirm summary judgment on that basis.

---

ly by willful, wanton, or reckless conduct, or by conduct which is so grossly negligent as to be the equivalent of wanton or reckless conduct." 62 Am.Jur.2d *Premises Liability* § 186, at 554–55 (1990) (footnotes omitted).

Thus, "[a]n owner or occupant of premises has been held to owe no duty to trespassers, to protect them from perils or hazards on adjoining or neighboring premises over which the defendant has no control...." *Id.* § 185, at 553 (footnote omitted).

8. Obviously, Muramoto's lot is not a public park or a "de facto park," which by its nature may

invite or induce users of a park to also use either the beach and ocean fronting or adjoining it. *See Littleton*, 66 Haw. at 68, 656 P.2d at 1345; *Kamakawiwoole*, 6 Haw.App. at 239, 718 P.2d at 1108. In this regard, Atahan was plainly not a "public invitee" as were the injured parties in *Kaczmarczyk* and *Littleton*, or characterized as such, as in *Kamakawiwoole*. Muramoto's lot was not the location for a hotel or beach resort, whose guests or customers may be impliedly invited to use adjoining beach and ocean areas.