**George COLLARD, Beverly Collard, Russell Collard, Shawn Collard, Melanie Collard, and Steven T. Barta as Special Administrator of the Estate of Vincent Collard, aka Keun Soo Lee, deceased, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 87–0759.**

United States District Court, D. Hawaii.

July 25, 1988.

Ian Mattoch, Dennis Ferm, Honolulu, Hawaii, for plaintiffs.

Daniel Bent, Gary L. Beaver, U.S. Attys. Office, Honolulu, Hawaii, for defendant.

### ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

KAY, District Judge.

The United States moves for summary judgment pursuant to Rule 56 of the Feder-

al Rules of Civil Procedure. The United States contends that the Hawaii Recreational Use Statute (Haw.Rev.Stat. §§ 520–1, et seq.) which encourages land owners to make land and water available to the public for recreational purposes by limiting their liability precludes the United States from liability under the Federal Tort Claims Act.

## I. BACKGROUND FACTS

On November 28, 1984, Vincent Collard, 13 years old, and his 14 year-old brother, Russell, were walking along North Beach on the Kaneohe Marine Corps Air Station. The portion of the beach the boys were on is controlled by the United States Marine Corps and is open to all active duty and retired military personnel, their dependents and their guests. No charge, admission price, or user fee of any kind was required by the United States Marine Corps or paid by Vincent Collard or his family.

On the day of the accident, there was a special services lifeguard on duty at the North Beach. Earlier in the day, the lifeguard had raised a red flag (indicating no swimming/surfing due to dangerous conditions) due to rough water and debris in the water. The debris included the large log, 3 to 4 feet in diameter and 30 feet long, which earlier in the morning had been noted being tossed around in the surf. After the log apparently was pushed over the reef and was partially beached and the other smaller obstacles were removed, a yellow/red caution flag was raised. The yellow/red caution flag, denoting dangerous surf/swim at your own risk, was posted at the time the accident occurred.

The Collard brothers apparently saw the large log in shallow water near the beach and entered the water to play on the log. The boys climbed on the log and attempted to roll the log. Russell got off the log. While Vincent was still on the log, a large wave hit him and the log, causing the log to roll and Vincent to fall into shallow water. The log rolled over Vincent, apparently causing a crushing blow to his head and eventually causing his death.

## II. ANALYSIS

The United States contends that the Hawaii Recreational Use Statute, Haw.Rev. Stat. §§ 520–1, et seq., which encourages land owners to make land and water available to the public for recreational purposes by limiting their liability precludes the United States from liability under the Federal Tort Claims Act. Under the Federal Tort Claims Act, the United States is liable for tort claims "in the same manner and to the same extent as a private individual under like circumstances...." *Proud v. United States*, 723 F.2d 705, 706 (9th Cir. 1984) (quoting 28 U.S.C. § 2674 (1976)). In order to establish the Government's liability in tort under the Tort Claims Act, plaintiffs must show that, under state law, a private individual would be liable in like circumstances for similar conduct. *Platts v. United States*, 658 F.Supp. 850 (D.Me. 1987).

The Hawaii Recreational Use Statute is intended to "encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons" entering the land for such recreational use. Haw.Rev. Stat. § 520–1. The Recreational Use Statute limits the duty of care required of a land owner. Section 520–3 provides in pertinent part:

> ... an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes.

■ Despite Plaintiffs' contentions to the contrary, Vincent Collard and his brother's activities in the water were unquestionably recreational. Although in defining "recreational purpose" the statute does not specifically mention "playing on logs", the statute does include swimming and further explicitly states that "recreational purpose ... is not limited to ..." the listed activities. H.R.S. § 520–2.

■ Plaintiffs further argue that the Recreational Use Statute does not apply because the beach where the accident oc-

curred is not open to the general public. However, the Hawaii Recreational Use Statute does not require a landowner to open his or her land to every person in the public in order to obtain the protection of the statute. *Stout v. United States*, 696 F.Supp. 538 (D.Haw.1987).

In defining "public" for the purposes of the Hawaii Recreational Use Statute, the District Court in *Stout* held that

> [t]he statute appears to apply even if the military base was closed to the general public.... The statute says "any person" not "anyone." Obviously a landowner can control who uses his land for recreational purposes. Such discretion should not result in the forfeiture of the immunity that the statute provides. Otherwise the whole purpose of the statute would be defeated because no one would allow anyone on their land if they had to allow everyone.

*Stout*, at 539.

Although Section 520–2(1) defines "land" for the purposes of the statute as "other than lands owned by the government," the District Court of Hawaii has applied the statute to lands owned by the United States. *Proud v. United States*, 723 F.2d 705 (9th Cir.1984); *Stout*, Civ. No. 85–1464. In the present case, there appears to be some question as to whether the area where the accident occurred was state or military land. The United States has not attempted to assert in this motion that the land where the accident occurred is not its land. To the contrary, in a supplemental declaration, counsel for the United States asserts that the United States is the proprietary owner of the subject beach. The Executive Order establishing the Kaneohe Bay Naval Defensive Sea Area, while it extends seaward from the extreme high water mark, does not explicitly take ownership of the beach area from the state. Under Hawaii law, the State of Hawaii has ownership of all land and ocean below the high-water mark (highest reaches of the waves or vegetation line). *Littleton v. State*, 66 Haw. 55, 65, 656 P.2d 1336 (1982). Although it seems unlikely that the Marine Corps would allow the state to control land within a restricted military installation, it remains a question whether the Marine Corps acquired legal ownership of the beach area where the accident occurred.

Under Haw.Rev.Stat. § 46–12, the county is responsible for removing and cleaning all debris likely to become a public nuisance from the shores and beaches. Assuming that the Marine Corps took exclusive control of the beach and ocean where the accident occurred, the question becomes whether the Marine Corps also assumed the duty to remove the debris from the beach. And further, if the Marine Corps did assume such duty to keep the beach free from debris, there are questions whether the Marine Corps performed the duty adequately and whether the log constituted a public nuisance. See *Littleton v. State*, 66 Haw. 55, 67, 656 P.2d 1336 (1982) (discussion of what constitutes a public nuisance).

Plaintiffs correctly assert that a landowner's immunity under Chapter 520 is not absolute. Section 520–5 sets out exceptions which will expose a landowner to tort liability even if he makes his land available for recreational use in compliance with the statute. Plaintiffs contend that the actions of the Marine Corps fall within the exceptions to the statute. Under Section 520–5, the Hawaii Recreational Use Statute will not limit in any way any liability which otherwise exists:

> [f]or wilful or malicious failure to guard or warn against a dangerous condition, use, or structure which the owner knowingly creates or perpetuates and for wilful or malicious failure to guard or warn against a dangerous activity which the owner knowingly pursues or perpetuates.

Haw.Rev.Stat. § 520–5(1).

In support of their contention that the United States exhibited a willful disregard for the safety of others, Plaintiffs cite two Illinois cases involving similar recreational use statutes where the land owners were held to have willfully failed to guard against or warn users of a dangerous condition. In *Stevens v. United States*, 472 F.Supp. 998 (C.D.Ill.1979), the Army Corps

of Engineers' decision not to require complete removal of submerged tree stumps from an area of a lake was held to be a willful failure to warn the plaintiff about a dangerous condition. The plaintiff in *Stevens* was injured when his head struck a submerged tree trunk while diving into the lake. The Government's failure to prohibit diving in all areas of the lake which contained the submerged tree stumps and the failure to warn plaintiff of the existence of the hidden danger were held to be a willful failure by the government to adequately warn of the danger.

The United States argues that plaintiffs' cases involve hidden dangers that were created by and known only to the property owner, and that in the present action, the log was readily apparent to those enjoying the use of the property. The United States further contends that plaintiffs' cases are distinguishable because in the instant action, the United States did not "create" the dangerous condition by placing the log at the beach area. Plaintiffs do not argue, nor is there any evidence to indicate, that the log came from the Marine Corps base or in any way belonged to the United States.

█ It has previously been stated in this District that "[t]he 'wilfulness' exception of Chapter 520 is not intended to include the mere failure to warn of the per se dangerous natural conditions always existing in ocean waters." *Viess v. Sea Enterprises Corp.*, 634 F.Supp. 226, 230 (D.Haw.1986) (plaintiff was injured by strong ocean waves). Although a log the size of the one that caused the injury is an unusual piece of debris to find floating in the ocean, there is no indication that the United States was in any way responsible for the log being at the beach. However, it is a question whether the log can be considered a "natural" ocean condition.

The Hawaii Supreme Court has characterized a telephone pole floating in the surf as an "unnatural condition." *Littleton v. State*, 66 Haw. 55, 656 P.2d 1336 (1982). In *Littleton,* the plaintiff, while picking seaweed in knee deep water, was injured by a telephone pole which was being tossed around by the surf. The Court found that the "State has a duty, at the very least, to warn the public of such dangerous unnatural conditions" as floating telephone poles. *Id.* at 63, n. 2, 656 P.2d 1336. In the present case, it is a question whether the log which caused the injury constitutes a "natural" or "unnatural" ocean condition.

Further, it is an issue whether the dangerous condition was "perpetuated" by the Marine Corps by its failure to remove the log which was seen in the proximity of the beach area for some period of time prior to the accident. Even though the log was visible, the danger the log presented may not have been apparent to the children whom the Marine Corps should have reasonably expected to use the beach or to those unfamiliar with the ocean. It is an issue whether the Marine Corps' failure to guard against or warn of the potential danger the log presented was "wilful" as defined by Section 520–5(1). It is also a question whether the Marine Corps "perpetuated" the dangerous condition by not removing the log from the swimming area.

The Recreational Use Statute was intended to limit the liability of a landowner by providing that "an owner of land owes no duty of care to keep premises safe...." Haw.Rev.Stat. § 520–3. However, even if the Recreational Use Statute is applicable, by stationing lifeguards and posting warning flags, the Marine Corps may have voluntarily assumed a duty of care. *Stevens,* 472 F.Supp. 998, 1012 (C.D.Ill.1979) ("by undertaking to promulgate rules and make inspections the United States may be liable for negligence even if the Recreational Use Act [is] applicable"). The Hawaii Supreme Court has articulated that one who "voluntarily undertook a course of affirmative conduct intended to induce the plaintiff to engage in an action, and also created a false appearance of safety upon which the plaintiff relied to his or her detriment" may be liable. *Geremia v. State,* 58 Haw. 502, 508, 573 P.2d 107 (1977). Whether by stationing a lifeguard and posting warning flags at the beach the Marine Corps induced the Collard boys to play on the log and further whether the deceased relied on

the Marine Corps' representation that the beach area was safe are questions of fact. *Id.* at 509, 573 P.2d 107.

The Hawaii Intermediate Court of Appeals has further noted "that an occupier of land fronting the beach and ocean who induces or invites a business or public invitee onto its land to engage in an action on the adjoining public beach or ocean may owe a duty to warn that invitee of the dangers involved in engaging in the action." *Kamakawiwoole v. State,* 6 Haw. App. 10369, 718 P.2d 1105 (1986). Under the *Kamakawiwoole* court's reasoning, the Marine Corps may have owed a duty to the deceased regardless whether it owned the land or the land was owned by the state. It is again a question for the trier of fact whether the deceased was induced onto the beach area by the Marine Corps' actions and further whether the Marine Corps then assumed a duty which it failed to perform adequately. *Id.*

The Hawaii Supreme Court has indicated that by stationing lifeguards at beaches, the State has voluntarily assumed a duty of care which it is obligated to perform with reasonable care. *Kaczmarczyk v. City & County,* 65 Haw. 612, 656 P.2d 89 (1982). In *Kaczmarczyk,* the plaintiff's son was swept out to sea and disappeared while swimming in strong currents. The Court held

> even where a municipality is under no duty to provide lifeguard services, yet if it voluntarily assumes this protective responsibility it has a duty to perform those services with reasonable care.

*Id.* at 617, 656 P.2d 89. Although in *Geremia, Kamakawiwoole,* and *Kaczmarczyk* the Recreational Use Statute was inapplicable because the accidents occurred on land not owned by the defendants, the rationale is applicable to the present action regardless whether the beach is owned by the United States. Assuming the Recreational Use Statute was applicable and further assuming the exceptions under Haw.Rev. Stat. § 520-5(1) were not present, the Marine Corps was under no obligation to "keep the premises safe ... or to give warning of a dangerous condition...."

Haw.Rev.Stat. § 520-3. However, once the Marine Corps voluntarily assumed the responsibility of stationing lifeguards and posting warning flags, the Marine Corps may have had an obligation to act with reasonable care. *Kaczmarczyk,* 65 Haw. 612, 656 P.2d 89 (1982); *Stevens,* 472 F.Supp. 998 (C.D.Ill.1979). Whether the Marine Corps acted with reasonable care is a question inappropriate for summary adjudication.

It is apparent that that there are issues of fact in dispute which are material to the resolution of the action before this court. Accordingly, IT IS HEREBY ORDERED that the defendant United States' Motion for Summary Judgment is DENIED.